IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| DOUGLAS SMITH; LEONA F. SMITH, }<br>}<br>Plaintiffs, }<br>}<br>v. }<br>}<br>EQUIFAX INFORMATION }<br>SERVICES, LLC; TRANS UNION }<br>LLC; FORD MOTOR CREDIT }<br>COMPANY, }<br>}<br>Defendants. } | Case No.: CV 04-P-1157-W |

## MEMORANDUM OPINION

The court has before it Defendant Ford Motor Credit Company's Motion to Stay Proceedings and Compel Arbitration and Motion to Dismiss (Doc. # 9) filed June 25, 2004. The motion is fully briefed and the court heard oral argument on August 26, 2004.

The words of Judge Carnes are right on target here:

> This is another arbitration dispute in which the parties are litigating whether or not they should be litigating. The familiar scenario is that the parties agree in writing to arbitrate any disputes between them, but then one party files a lawsuit taking the position that the agreement to arbitrate is inapplicable, invalid, or unenforceable for one reason or another. Here the Plaintiffs contend the agreement to arbitrate does not cover their federal statutory claims....

*Anders v. Hometown Mortgage Services, Inc.*, 346 F.3d 1024, 1026 (11th Cir. 2003). For the reasons stated below, the court concludes that the agreement is broad enough to cover the dispute. As a result, the court dismisses Plaintiffs' claims against Ford Motor Credit Company and stays all other aspects of this case pending the result of the arbitration between Plaintiffs and Ford Motor Credit Company.

I.   **Relevant Facts**

On or about April 4, 2001, Plaintiffs Douglas and Leona Smith (the "Smiths") and Ford Motor Credit entered into an Alabama Motor Vehicle Lease Agreement (the "Lease") and an Alabama Motor Vehicle Arbitration Agreement (the "Arbitration Agreement"). By virtue of these agreements, Ford Motor Credit extended credit to the Smiths in connection with their lease of a 2001 Ford Taurus from Townsend Ford.

The Arbitration Agreement provides for a dispute resolution process, which "applies to all claims and disputes between [the Smiths] and Ford Credit arising out of the transaction to which the contract identified above relates." (Doc. #9, at Ex. A).[1] On or about November 5, 2003, the Smiths

---

[1] Specifically, the Arbitration Agreement provides in relevant part:

**READ THIS ARBITRATION AGREEMENT CAREFULLY. IT LIMITS CERTAIN OF YOUR RIGHTS, INCLUDING YOUR RIGHT TO BRING COURT ACTION.**

In consideration of the mutual promises made in this Agreement, you and Ford Credit agree to arbitrate, under the following terms:

**ARBITRATION:** Arbitration is a method of resolving disputes between parties without filing a lawsuit in court. By signing this Agreement, you and Ford Credit, are both agreeing that if there are any disputes between you and Ford Credit, including the validity of this Agreement, you and Ford Credit must submit them to an arbitrator. The arbitrator's decision is final and binding on you and Ford Credit. The arbitrator does not have to give any written reasons for the decision. You and Ford Credit are giving up the right to a jury trial.

**DISPUTES COVERED:** This Agreement applies to all claims and disputes between you and Ford Credit arising out of the transaction to which the contract identified relates. These claims and disputes include but are not limited to any claim or dispute based on an allegation of fraud, misrepresentation, suppression, arbitrability or claims or disputes arising out of the actions of others, including but not limited to the dealer. This Agreement also applies to any claim or dispute, arising out of the transaction, between you and any of Ford Credit's employees, agents, subsidiaries and affiliates, except Ford Motor Company and any other affiliated vehicle manufacturer or distributor.

You agree that Ford Credit retains the option to use judicial or nonjudicial relief to enforce the security agreement relating to the motor vehicle securing the transaction underlying the arbitration

2

notified Ford Motor Credit that their 2001 Ford Taurus had been involved in a total loss. Around this same time period, Progressive Insurance Company notified Ford Motor Credit that it would be remitting payment in the amount of $8,782.00 on the total loss of the vehicle. Ford Motor Credit then notified the Smiths that after subtracting out the applicable insurance proceeds, including a portion paid by GAP Insurance, the payoff balance remaining under the Lease was $519.43. In this notice, Ford Motor Credit requested payment within ten days.

When Ford Motor Credit did not receive the payoff amount within the ten (10) day period, it submitted the Smiths' account for a charge off in the amount of $519.43. On December 1, 2003, Ford Motor Credit received a $519.43 payment from the Smiths to payoff their lease account. On December 15, 2003, Ford Motor Credit notified the appropriate credit bureaus electronically that it had received the Smiths' payoff amount under the Lease.

On June 7, 2004, the Smiths filed this lawsuit against Defendants Ford Motor Credit, Equifax, and Trans Union, LLC asserting violations of the Fair Credit Reporting Act. (Doc. #1). Ford Motor Credit contends that, with respect to the claims asserted against it, this court should compel arbitration and dismiss this case because all the claims asserted by the Smiths are subject to the dispute resolution procedures (including arbitration) contained in the Arbitration Agreement. (Doc. #9, Ex. A). The Smiths, relying upon Alabama state law, contend that the dispute in this case

---

agreement. Such judicial relief may take the form of a lawsuit or a pre-judgment remedy. A pre-judgment remedy may include, but is not limited to, repossession of the motor vehicle. The institution and maintenance of an action for judicial relief in a court to repossess any collateral or to enforce the security agreement shall not constitute a waiver of the right of any party to compel arbitration regarding any other dispute or remedy subject to arbitration in this Agreement. You have the right t file bankruptcy in court.

(Doc. #9, at Ex. A).

3

is outside the scope of the provisions contained in the Arbitration Agreement.

## II. Discussion

"In enacting the [Federal Arbitration Act ("FAA")], Congress demonstrated a 'liberal federal policy favoring arbitration agreements.'" *MS Dealer Service Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999) (citation omitted). As such, "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Id.* at 947. "By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)(emphasis in original). Arbitration "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Communications Workers of America*, 475 U.S. 643, 650 (1986).

Pursuant to the FAA, this court may consider only issues relating to "the making and performance of the agreement to arbitrate[],"determine whether a valid agreement to arbitrate exists and, if it does, ascertain whether the agreement encompasses the dispute at issue. *See Municipal Energy Agency of Mississippi v. Big Rivers Elec. Corp.*, 804 F.2d 338, 342 (5th Cir. 1986); *see also Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967). Accordingly, the court must decide (1) whether the Alabama Motor Vehicle Arbitration Agreement is valid and applicable to this lawsuit and (2) whether Plaintiffs' claims fall within the scope of the arbitration provision which, by definition, "applies to all claims and disputes between [Plaintiffs] and Ford Credit arising out of the [financing] transaction ...." (Doc. # 9, at Ex. A).

In this action, Plaintiffs claim Defendants violated their rights under the Fair Credit Reporting Act ("FCRA"). 15 U.S.C. § 1681. "Federal statutory claims are as a rule arbitrable ...." *See Anders,* 346 F.3d at 1030, citing *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 28 (1991). Other district courts have compelled arbitration in FCRA cases. *See e.g., Berkery v. Cross Cty. Bank,* 256 F.Supp. 2d 359 (E.D. Pa. 2003) (granting motion to compel arbitration of FCRA claims); *Greene v. Chase Manhattan Automotive Finance Corp.,* 2003 WL 22872102 (E.D. La. 2003) (same); *Jacobsen v. J.K. Pontiac GMC Truck, Inc.,* 2001 WL 1568817 (N.D. Ill. 2001) (same). The court agrees with these courts that nothing in the FCRA precludes arbitration of claims filed under that statute. Therefore, the question is whether the Arbitration Agreement applies to Plaintiffs' claims against Ford Motor Credit.

As discussed below, the court is persuaded that the Arbitration Agreement applies to Plaintiffs' claims in this case. The Arbitration Agreement expressly provides that it "applies to all claims and disputes ... arising out of the transaction to which the [lease] relates." In addressing the term "arising out of" when found in arbitration agreements, the Eleventh Circuit has stated as follows:

> Disputes that are not related – with at least some directness – to performance of duties specified by the contract do not count as disputes "arising out of" the contract, and are not covered by the standard arbitration clause. . . . However, where the dispute occurs as a fairly direct result of the performance of contractual duties . . . then the dispute can fairly be said to arise out of or relate to the contract in question.

*Telecom Italia v. Wholesale Telecom Corp.,* 248 F.3d 1109, 1116 (11th Cir. 2001).

Plaintiffs argument that their claims do not arise out of the Lease are without merit. It does not require much analysis to say that Ford Motor Credit's "charge off" of the Smiths' account was

5

a fairly direct result of the Plaintiffs' alleged failure to timely make a payment under the Lease. Therefore, Plaintiff's claims "can fairly be said to arise out of ... the contract in question." *Telecom Italia*, 248 F.3d at 1116.

### III. Conclusion

Given that only some of Plaintiffs' claims in this case are subject to arbitration, the court finds that only the claims asserted against Ford Motor Credit Company are due to be dismissed. *See, e.g., Stiles v. Home Cable Concepts, Inc.*, 994 F. Supp. 1410, 1415-1416 and 1418-1419 (M.D. Ala. 1998) (finding that the matter was due to be dismissed with prejudice and sent to arbitration because "[w]here all of the issues raised in a complaint must be submitted to arbitration ... a dismissal of the action is appropriate, since retaining jurisdiction and staying the action does not serve judicial economy."); *Clayton v. Woodmen of World Life Ins. Soc'y*, 981 F. Supp. 1447 (M.D. Ala. 1997) (same); *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) (holding that dismissal, rather than a stay, is required, when all of the issues raised must be submitted to arbitration, noting that "[g]iven our ruling that all issues raised in this action are arbitrable and must be submitted to arbitration, retaining jurisdiction and staying the action will serve no purpose."). The Plaintiffs' remaining claims, which have been asserted against Equifax and Trans Union, are due to be stayed pending the outcome of the arbitration between Plaintiffs and Ford Motor Credit Company. A separate order will be entered.

**DONE** and **ORDERED** this ___2rd___ day of September, 2004.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE